## In re Community of Gray

*R. Timothy Weston*, for Department of Environmental Resources.

*James B. Yelovich*, for appellants.

BROUGHTON, Chairman of the Board, September 10, 1973.—This matter is before the Environmental Hearing Board on an appeal, filed by certain residents of an area in Jenner Township, Somerset County, known as the Community of Gray (Gray), from two orders issued by the Department of Environmental Resources (department) to Jenner Township.

In the first of these orders, hereinafter referred to as order no. 1 dated June 9, 1972, the department, after making a finding that untreated and inadequately treated sewage was being discharged from Jenner Township into Quemahoning Creek, the North Branch of Quemahoning Creek and their tributaries in the Villages of Gray and Acosta, ordered Jenner Township to construct and operate two sewage conveyance and treatment facilities, permits for which had previously been issued to Jenner Area Joint Sewer Authority.

In the second of these orders, hereinafter referred to as order no. 2, also dated June 9, 1972, the department made a finding that abatement of pollutional discharges of sewage in Lincoln Township, Somerset County, in a manner consistent with sections 201, 202 and 203 of The Clean Streams Law of June 22, 1937, P. L. 1987, as amended, 35 PS §691.201, 35 PS §691.202 and 35 PS §691.203, requires that Lincoln Township, Jenner Township and Jenner Area Joint Sewer Authority plan, design, finance, construct and operate joint sewage conveyance and treatment facilities. The department ordered Jenner Township to develop and

negotiate with Lincoln Township and Jenner Area Joint Sewer Authority agreements designed to produce these needed conveyance and treatment facilities.

In its appeal from these orders, Gray contends that the department has failed to prove that there are discharges of untreated or inadequately treated sewage to the waters of the Commonwealth from Gray. Gray also bases its appeal on the fact that its residents cannot afford to pay for construction of sewage conveyance and treatment facilities in their area.

Hearings on this appeal were held before Louis R. Salamon, Esq., hearing examiner, on November 13, 1972, and on January 29, 1973.

It must be noted that attorney James B. Yelovich, who represented Gray at the hearing held on January 29, 1973, stated that his clients were interested only in voiding that portion of order no. 1 which required the construction of sewage conveyance and treatment facilities in Gray. . . .

## DISCUSSION

The department has very clearly demonstrated that untreated or inadequately treated sewage is continually being discharged from numerous points in Gray to the North Branch of Quemahoning Creek.

William Cicciarelli, who appeared at the hearings in this matter on behalf of Gray, concurred in this determination.

As Gray is situate in Jenner Township, Jenner Township is in violation of sections 201 and 202 of The Clean Streams Law, supra, 35 PS §§691.201 and 691.202, as the result of the existence of such discharges.

Although 78 of the 87 lots in Gray which are improved by an occupied structure or dwelling are equipped with septic tanks, it is rather obvious that

the pollution problems have not been solved by these systems.

Abatement of the problem of discharges of raw sewage to the waters of the Commonwealth, and compliance with The Clean Streams Law can be achieved only if sewage conveyance and sewage treatment facilities are constructed to serve the residents of Gray.

This was recognized by Jenner Area Joint Sewer Authority when it applied to the department for a permit to construct such facilities in Gray, which permit the department issued.

The department was and is cognizant of the fact that there are tremendous capital costs involved in constructing sewage facilities. The department was and is aware that a prerequisite for Federal funding for this project, or for any other sewage facility construction project in areas of Jenner Township and Lincoln Township included in the Quemahoning Watershed, is to direct these municipalities, together with the Jenner Area Joint Sewer Authority, to develop a comprehensive plan for sewage conveyance and treatment.

Furthermore, the department has the duty, under section 5 of The Clean Streams Law, 35 PS §691.5, to consider water quality management and pollution control in the watershed as a whole and the feasibility of combined or joint treatment facilities. This duty also arises by virtue of Department Regulation 91.31 which provides that the department shall not approve a sewage facilities project requiring its approval unless such project is included in or conforms with a comprehensive program of water quality management and pollution control.

For these reasons, and pursuant to the authority granted to the department by the provisions of section

203 of The Clean Streams Law, supra, 35 PS. §691.203, the department issued the two orders to Jenner Township from which Gray has appealed.

It is clear that the primary objection of the citizens of Gray to the construction of sewage facilities in their community is that they cannot afford the front-foot assessment, the connection fee and the monthly rental fee which they will be charged.

Although we sympathize with these citizens in the prospective financial plight with which they are faced, we must hold that the violations of The Clean Streams Law, supra, to wit, the discharge of untreated or inadequately treated sewage to the waters of the Commonwealth from Gray, must be abated in spite of the financial hardship which abatement activities to cure such violations might entail. See Commonwealth ex rel. Alesandroni v. Borough of Condersport, 85 Dauph. 82 (1966); Commonwealth ex rel. Alesandroni v. Borough of Confluence, 87 Dauph. 214 (1967), affirmed 427 Pa. 540, 234 A. 2d 852 (1967); In Re Borough of Zelienople, E. H. B. Docket No. 72-199 (February 5, 1973); In Re Sellersville Borough, E. H. B. Docket No. 72-173 (July 31, 1973).

We trust that the officials of Jenner Township and Jenner Area Joint Sewer Authority and their engineers and consultants will devise a plan which will take into consideration the financial plight of these citizens as well as abate the violations of The Clean Streams Law, which are so clearly present here.

## CONCLUSIONS OF LAW

1. The board has jurisdiction of the parties and the subject matter of this appeal.

2. Jenner Township, in which Gray is situate, is in violation of sections 201 and 202 of The Clean Streams Law of June 22, 1937, P. L. 1987, as amended,

35 PS §§691.201 and 691.202, by reason of the continuing discharges of untreated or inadequately treated sewage to the waters of the Commonwealth.

3. Violations of The Clean Streams Law, supra, must be abated in spite of the financial hardship which abatement activities to cure such violations might entail.

4. The Department of Environmental Resources properly issued the orders of June 9, 1972, under the authority of section 203 of The Clean Streams Law, supra.

### ORDER

And now, September 10, 1973, the orders issued by the Department of Environmental Resources on June 9, 1972, are hereby upheld and the appeal of the Community of Gray is dismissed.